IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CRISSY PARKER**                                                                                                  **PLAINTIFF**

v.                                                           CIVIL ACTION NO. 3:23-cv-28-DPJ-FKB

**SOUTHERN CHARM FAMILY HEALTHCARE LLC;**
**KELLI MARIE FOSTER, INDIVIDUALLY; AND**
**CHRISTOPHER CHASE FOSTER, INDIVIDUALLY**                              **DEFENDANTS**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** the Plaintiff, Crissy Parker, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages for the actions of the Defendants, Southern Charm Family Healthcare LLC, Kelli Marie Foster, individually, and Christopher Chase Foster, individually, which constitute a violation of her rights pursuant to the Fair Labor Standards Act. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1.    Plaintiff, Crissy Parker, is an adult female who resides in Madison County, Mississippi.

2.    Defendant, Southern Charm Family Healthcare LLC, is a Limited Liability Corporation licensed in Mississippi that may be served with process through its registered agent: Christopher Chase Foster, 2799 Hwy 49 S, Suite E, Florence, Mississippi 39073.

3.    Defendant, Kelli Marie Foster, individually, is an adult resident citizen of Rankin County, Mississippi and may be served with process at her place of employment: 2799 Hwy 49 S, Suite E, Florence, Mississippi 39073.

1

4. Defendant, Christopher Chase Foster, individually, is an adult resident citizen of Rankin County, Mississippi and may be served with process at his place of employment: 2799 Hwy 49 S, Suite E, Florence, Mississippi 39073.

## JURISDICTION AND VENUE

5. This Court has personal and subject matter jurisdiction over the Defendants and venue is proper in this Court.

6. This Court has federal question jurisdiction over Plaintiff's claims pursuant to the FLSA.

7. Venue and jurisdiction are proper as the claims are brought pursuant to the FLSA to recover unpaid minimum and overtime wages, an additional equal amount as liquidated damages, obtain declaratory relief, and reasonable attorney's fees and costs.

## STATEMENT OF FACTS

8. Plaintiff is a 42-year-old female resident of Madison County, Mississippi.

9. On May 18, 2022, in an in-person interview, Plaintiff agreed to work as a contractor in the position of Nurse Practitioner with Southern Charm Family Healthcare LLC (SCFH).

10. Owners Christopher Chase Foster and Kelli Marie Foster told Plaintiff that her pay rate would be $55 per hour.

11. The owners stated that due to a lengthy credentialing process, it would be approximately one month before she was paid, but after that she would be paid on a bi-weekly basis.

12. Mrs. Foster told Plaintiff that she would be considered a 1099 contractor until after her 90-day evaluation.

13. After that, they would negotiate Plaintiff becoming a clinic employee.

14. On June 29, 2022, Plaintiff asked Mr. Foster when she would be receiving her first paycheck.

15. At that point, Mr. Foster stated that Plaintiff would be paid on July 8, 2022.

16. On July 6, 2022, Plaintiff had a 30-day evaluation with Mr. Foster.

17. Mr. Foster addressed some errors Plaintiff had displayed with her charting, yet overall, she received positive feedback regarding her job performance.

18. Mr. Foster did not ask Plaintiff to sign anything, nor did she receive anything from him in writing.

19. Later that same day, July 6, 2022, Mrs. Foster asked Plaintiff if Mr. Foster had told her about her payday.

20. Plaintiff responded, "Yes, he told me last week it would be this week, on July 8, 2022."

21. Mrs. Foster, however, said, "No, it will be the following week, July 15, 2022."

22. On July 15, 2022, Plaintiff received her first paycheck.

23. Plaintiff received a money order in the amount of $440.

24. On the memo line, it noted that the paycheck period was "5/17/22 – 5/27/22".  Plaintiff worked only one day during that time frame.

25. After that, Plaintiff was told she would receive paychecks every two weeks.

26. On July 29, 2022, two weeks following her reception of the first paycheck, Plaintiff was not in the office.

27. On August 1, 2022, Plaintiff returned to the office and requested her paycheck.

28. Mrs. Foster responded she would give it to Plaintiff later in the day, but that did not happen.

29. On August 2, 2022, Plaintiff again requested her paycheck.

30. Mrs. Foster alleged that billing claims had been rejected by insurance and they were therefore unable to pay her.

31. On August 4, 2022, Mr. Foster alleged that billing claims were being denied because of Plaintiff's charting.

32. This did not make sense to Plaintiff.

33. Plaintiff asked again about being paid and was again put off.

34. Later that day, Plaintiff stated she could not continue coming to work.

35. It was agreed upon verbally between Plaintiff and Mr. Foster that Plaintiff would continue, for the time being, to perform telehealth for SCFH but she would no longer work at the clinic.

36. On August 8, 2022, since Plaintiff had still never been paid besides the one paycheck, she received on July 15th for $440, Plaintiff emailed a resignation letter to SCFH, to go into effect immediately.

37. Plaintiff's letter stated, "…effective immediately at 11:53 a.m. 8/8/22, I am resigning my position at Southern Charm Family Healthcare.  I am now actively looking

for other full-time employment while anticipating the prompt payment of the wages of which I am due in return."

38. The letter continued, stating, "Below are the cumulative hours that I have completed with the clinic currently, according to the information in Connecteam…Hours clocked on Connecteam: May 30-Jun 10: 47.25 ($2598.75) Jun 13-Jun 24: 51.33 ($2823) Jun 27-Jul 8: 42.19 ($2320) Jul 11-Jul 22: 45.12 ($2481.60) Jul 25-Aug 5: 33.91 ($1865.05) Aug 8: 3.09 ($169.95) Totaling: $12,258.35".

39. On August 9, 2022, Plaintiff received an email response from Mr. Foster.

40. In that letter, Mr. Foster alleges that the delay in paying Plaintiff was due to rejected insurance claims and he blamed Plaintiff for various issues, e.g., "improper diagnosis codes, incomplete physical exams, lack of problems list, improper diagnosis codes to cover labs and or testing" that allegedly led to the rejections.

41. The letter goes on to allege that these reasons for the rejections of insurance claims had been discussed with Plaintiff multiple times.

42. Plaintiff contends her charting was not deficient in the ways described by Mr. Foster and was not the basis for insurance claim rejections.

43. She further denies that this was discussed with her multiple times, as Mr. Foster alleges.

44. Mr. Foster's letter goes on to allege that Plaintiff is guilty of "patient abandonment" by resigning so abruptly.

45. Plaintiff contends that prior to her resignation, she contacted the medical board and specifically asked if resigning in her circumstance would constitute patient abandonment. Plaintiff was assured it was not.

46. Mr. Foster's letter finishes by deducting multiple costs from the total cost owed to Plaintiff.

47. By Mr. Foster's calculation the total owed to Plaintiff is $11,597.30; however, he then deducts various costs totaling $7,279.50, and he therefore alleges that SCFH owes Plaintiff $4,318.80.

48. Plaintiff contends none of these alleged costs to her were never agreed upon previously and are therefore not applicable.

49. After Plaintiff resigned, Plaintiff learned from former patients that Mr. and Mrs. Foster were giving patients false information, e.g., that Plaintiff was on temporary leave and would be returning any day to the clinic or that Plaintiff was on medical leave.

50. On September 14, 2022, at about 9 a.m., Plaintiff posted online on the Real Talk Richland group within Facebook the message that "I have been contacted by several patients recently. I am no longer employed by Southern Family Healthcare. I resigned my position at the clinic in early August."

51. Later that day, at 10:10 a.m., Mrs. Foster left a voicemail for Plaintiff stating, "Hey Crissy, it's Kelly…I was made aware of some kind of post you've made on social media…I would have to ask you to take that down, especially with the social media policy…There hasn't been anything said, yay or nay, against you at all and that's just not true…I would really appreciate it if you would take that down…thank you…"

52. That same date (September 14, 2022), Plaintiff mailed the Fosters the electronic token she had been given to use for prescribing controlled substances.

53. The token was received on September 16, 2022 (confirmed by signature).

54. Plaintiff has emailed the Fosters approximately ten times requesting to

arrange a time to get her personal belongings.

55. Plaintiff has received no response.

56. Plaintiff learned that the Fosters were evicted from the location where she was employed.

57. With the permission of the property manager, Plaintiff managed to obtain entry to the building the day the locks were changed, but the building was empty and none of her belongings were there.

58. The Fosters have posted a new address.

59. Plaintiff has reached out and asked if she could come to the new location to obtain her personal belongings.

60. Plaintiff has received no response.

### **COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT**

61. Plaintiff alleges and incorporates all averments set forth in paragraphs 1 through 60 above as if fully incorporated herein.

62. Plaintiff was a non-exempt employee and subject to the provisions of the Fair Labor Standards Act as it pertains to whether or not Plaintiff was entitled to minimum wages and overtime pay for all overtime hours worked.

63. The Fair Labor Standards Act requires that employees be paid at least the minimum wage for all hours worked in addition to an overtime premium at a rate not less than one and one-half (1 ½) times the regular rate at which they are employed for all hours in excess of forty (40) hours in a work week. 29 U.S.C. § 207(a).

64. Plaintiff has not been paid minimum wages or overtime compensation under the Fair Labor Standards Act at a rate of 1 ½ her regular rate of pay.

65. The acts of the Defendants constitute a willful intentional violation of the Fair Labor Standards Act.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. All compensation earned;
2. Unpaid minimum and overtime wages pursuant to the FLSA;
3. Liquidated damages;
4. Attorney's fees;
5. Lost benefits;
6. Pre-judgment and post-judgment interest;
7. Costs and expenses; and
8. Such further relief as is deemed just and proper.

THIS the 13th day of January 2023.

        Respectfully submitted,

        Crissy Parker, Plaintiff

By: /s/Louis H. Watson, Jr.
    Louis H. Watson, Jr.  (MB# 9053)
    Nick Norris (MB# 101574)
    Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, MS 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
Web:  www.watsonnorris.com